UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LEROY HARRIS,<br><br>                Plaintiff,<br>     v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>                Defendant. | Case No. 2:23-cv-00259-MMD-MDC<br><br>ORDER |

## I.   SUMMARY

Pro se Plaintiff Leroy Harris sued his former employer, Defendant Clark County School District ("CCSD"), under the Americans with Disabilities Act of 1990 ("ADA") for allegedly failing to rehire him because he has a disability. (ECF No. 50 ("SAC"[1]).) Before the Court is Defendant's motion for summary judgement.[2] (ECF No. 56 ("Motion").) As further explained below, the Court will grant the Motion because Plaintiff fails to establish a prime facie case of discrimination.

## II.   FACTUAL BACKGROUND[3]

In the fall of 2017, Plaintiff became a probationary[4] physical education teacher at Bunker Elementary School. (ECF No. 56-6 at 30.) His duties included but were not limited to teaching physical education, classroom management, posting weekly lesson plans,

---

[1] In his SAC, Plaintiff incorrectly states that his first amended complaint is the operative complaint in this case. (ECF No. 50 at 1.) Upon filing, the SAC became the operative complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent . . . .") (internal quotation marks and citation omitted). The SAC will therefore be treated as the operative complaint.

[2] Plaintiff responded (ECF No. 58) and Defendant replied (ECF No. 59).

[3] The facts that follow are undisputed unless otherwise noted.

[4] As a probationary employee, Plaintiff was not entitled to reemployment following any of the first three years of his probationary period. See NRS § 391.820(1).

and completing student learning goals. (ECF No. 56-2 at 7-8.) Principal Pauline Mills supervised Plaintiff. (*Id.* at 7.)

### A. Wheelchair Ramp Removal and Replacement

During the summer of 2018, the wheelchair ramp to Plaintiff's portable classroom was removed. (ECF No. 56-3 at 3.) Principal Mills requested it be replaced throughout the summer and fall of 2018. (*Id.*) In November 2018, Plaintiff wrote on a punch list that the wheelchair ramp was still missing and students needed it for classroom access. (*Id.* at 32.) He did not indicate that he personally needed the wheelchair ramp because of his disability. (*Id.*) Plaintiff approached Principal Mills the following month about filing a reasonable accommodation request with the Office of Diversity and Affirmative Action Programs ("ODAA") for the wheelchair ramp's return, and Principal Mills encouraged him to do so. (*Id.* at 3.) Plaintiff requested the wheelchair ramp to be reinstalled as an accommodation with ODAA on December 26, 2018. (ECF No. 56-6 at 21.) The wheelchair ramp was reinstalled over the weekend of January 19 and 20, 2019. (*Id.*)

### B. Plaintiff's Job Performance and Denial of Rehiring

On March 23, 2018, Principal Mills issued Plaintiff an oral warning that his job performance was below standard because he was "failing to adequately supervise students during extracurricular activities, [] soliciting donations without administrative approval,[5] [] not following lesson plans, and [] not obtaining authorization prior to showing a cartoon video during class." (ECF No. 56-3 at 2, 10.) Plaintiff was instructed to submit a written supervision plan for his after school program, cease sending any school-related communications to the community without approval, follow his lesson plan, implement lessons based on grade level standards, maximize physical activity, get approval before showing an educational video, do not show unrelated videos or give free time, review the staff handbook, and "be honest and forthright in all [] interactions within the workplace."

---

[5]Plaintiff asserts in the SAC that this allegation is false. (ECF No. 50 at 5-6.) However, Plaintiff himself attaches evidence of him soliciting a donation from Robco Electric Company to pay for students' soccer league entry fee. (ECF No. 50 at 19.) While Principal Mills is CC'ed on the letter, Plaintiff does not proffer evidence that he garnered administrative approval before sending this letter.

(*Id.* at 11.) Plaintiff did not respond or grieve the warning. (ECF No. 56-2 at 25.) That same day, Principal Mills issued Plaintiff's 2017-2018 evaluation, which rated his performance as "developing." (ECF No. 56-3 at 15.).

On December 11, 2018, Principal Mills held an investigatory conference with Plaintiff to discuss his substandard job performance. (*Id.* at 35-36.) Plaintiff received a written warning a few days later that stated that his performance was "below standard and must improve," and directed him to "[b]e respectful and professional at all times in [the] workplace," plan, prepare, and execute age-appropriate lessons, create a classroom management plan, and comply with all previously issued directives. (*Id.* at 38-39.)

Plaintiff's 2018-2019 evaluation was issued on March 21, 2019, and again rated his performance as "developing." (*Id.* at 65.) His directives included completing his lesson plans prior to the start of the work week, ensuring lessons were developmentally appropriate, maximizing instructional time, and improving classroom management. (*Id.* at 64.)

On April 26, 2019, Plaintiff received Notice of Non-Reemployment for "[f]ailure to satisfy performance standards of the Clark County School District." (*Id.* at 67.) On May 2, 2019, Plaintiff emailed ODAA because he believed that his non-reemployment was retaliation for seeking the return of the wheelchair ramp. (ECF No. 56-6 at 18.) On May 22, 2019, ODAA responded that it completed their investigation and were "unable to substantiate [Plaintiff's] allegations of 'retaliation'." (*Id.* at 20.)

Plaintiff applied for reemployment with the District in June 2020. (ECF No. 56-8 at 2.) He applied for eight different positions. (ECF No. 50 at 13.) CCSD's Human Relation's Department ("HR") sent a request for information from the Employee-Management Relations Department ("EMR") regarding "any pertinent information, such as, [sic] discipline, grievance, early resolution, sick leaves review, fingerprints and status logs" related to Plaintiff. (ECF No. 56-7 at 5-6.) EMR recommended HR not to rehire Plaintiff. (*Id.* at 5.) EMR was not aware that Plaintiff had a disability. (*Id.* at 2.) HR decided not to rehire Plaintiff based on the Notice of Non-Reemployment, his oral warning, his written

3

warning, and his "developing" rating from his 2017-2018 and 2018-2019 evaluations. (ECF No. 56-8 at 2.) During the process of reviewing job applications from former employees, HR does not request documents or information from ODAA. (*Id.* at 3.)

Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") and the U.S. Equal Employment Opportunity Commission on January 26, 2021. (ECF No. 56-6 at 26.) In the Charge, Plaintiff alleged that his termination and denial of reemployment were in retaliation to his reasonable accommodation request and/or filing an internal discrimination complaint. (*Id.* at 26-27.) ODAA responded by informing NERC that Plaintiff was not rehired because he "was a poor performing probationary employee." (*Id.* at 29.)

Plaintiff then initiated this action. In his SAC, Plaintiff brings one claim under Title I of the ADA for failure to hire. (ECF No. 50 at 12-13.) He alleges that Defendant refused to rehire him "because of his disabilities." (*Id.* at 13.)

### III.   DISCUSSION

Defendant argues that Plaintiff cannot demonstrate a prima facie case of discrimination under Title I of the ADA because he has produced no evidence that he was not rehired because of his disability. (ECF No. 56 at 11.) Plaintiff responds that Defendant rejected him because of his disability and is flawed in its allegation that "Plaintiff was not qualified to work in CCSD."[6] (ECF No. 58 at 1, 10.) The Court agrees with Defendant.

The ADA provides in part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring [of employees] . . . ." 42 U.S.C. § 12112(a). To prove a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) they are disabled under the ADA, (2) they are a qualified individual with a disability, and (3) they were discriminated against because of their disability. *See Bates v. United Parcel Service, Inc.*,

---

[6]Plaintiff responds using a Title VII employment discrimination standard, which differs from the standard under the ADA. (ECF No. 58 at 7.) This standard is inapplicable here as Plaintiff sues only under the ADA. (ECF No. 50 at 2.) The Court considers Plaintiff's arguments where the standards overlap and his assertions are relevant.

511 F.3d 974, 988 (9th Cir. 2007) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). Regarding the third prong, a plaintiff must show that the adverse employment action would not have occurred but for the disability. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) ("ADA discrimination claims under Title I must be evaluated under a but-for causation standard.").

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to establish a non-discriminatory, legitimate reason for the adverse employment action. *See Brown v. City of Tuscon*, 336 F.3d 1181, 1186-87 (9th Cir. 2003) (citations omitted). The plaintiff must then show defendant's proffered reasons are pretext for discrimination. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001). A plaintiff can demonstrate pretext by either persuading the court that a discriminatory reason more likely influenced the employer's decision or by showing the employer's explanation is "unworthy of credence." *Villiarimo v. Aloha Island, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (citation omitted).

Plaintiff fails to establish prima facie discrimination because he does not proffer evidence that Defendant did not rehire him because of his disability.[7] EMR was unaware

---

[7]The Court will address only the third prong of the prima facie discrimination standard because failing to meet any of the prongs ends a claim. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (establishing that a plaintiff must show all three elements).

5

that Plaintiff had a disability when it recommended not to rehire him,[8] and HR did not request any information related to a possible disability when evaluating Plaintiff's applications. (ECF Nos. 56-7 at 2; 56-8 at 2.) Accordingly, HR could not have reasonably known about Plaintiff's disability, and by extension, could not have been influenced by it. *Cf. McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995) ("The employer could not have been motivated by knowledge it did not have . . . .") Rather, HR explicitly stated that it did not rehire Plaintiff because of his poor work performance. (ECF No. 56-8 at 2.) Plaintiff proffers no evidence to the contrary.

Even if but-for causation existed to support prima facie case, Plaintiff cannot show HR's reason was a pretext for discrimination. Defendant proffered that it had a legitimate reason not to rehire Plaintiff: Plaintiff's long-documented poor job performance working for Defendant. This documentation began well before he requested an accommodation with ODAA, and Plaintiff has not proffered evidence beyond conclusory statements that

---

[8] In his SAC, Plaintiff argues that evidence he proffers of emails between EMR and Principal Mills prove that they conspired to discredit him and prevent future employment with Defendant. (ECF No. 50 at 8.) However, the emails do not indicate any information of a possible conspiracy and do not mention Plaintiff's disability. Rather, they concern Principal Mill's seeking guidance on Plaintiff's unprofessional conduct and poor work performance. (*Id.* at 23-35.)

Plaintiff also argues that Mollie Hall, the Director of EMR, "deliberately misled the court" because she "knew Plaintiff had participated in protected activities." (*Id.* at 9.) He argues that EMR knew because it gave testimony to NERC regarding his Charge of Discrimination. (*Id.*) However, as Defendant notes, this claim is not supported by the chronology of evidence. (ECF No. 56 at 14.) ODAA did not receive Plaintiff's Charge of Discrimination until September 24, 2021, over a year after Plaintiff applied for reemployment. (ECF No. 56-6 at 26.) Accordingly, any communication between ODAA and EMR regarding the Charge would have occurred months after Plaintiff applied for reemployment. Plaintiff does not proffer other evidence that EMR knew about Plaintiff's disability prior to declining to rehire him.

his performance evaluations or warnings were created to serve as pretext.[9] Plaintiff himself did not grieve an oral warning he received. (ECF No. 56-2 at 25.) Ultimately, Plaintiff's own performance record supports Defendant's legitimate reason not to rehire him that is independent from and unrelated to his disability. Thus, Defendant had a legitimate business reason for not rehiring Plaintiff, and Plaintiff cannot show that the reason was a pretext for discrimination.

The Court will therefore grant Defendant's Motion because Plaintiff does not proffer evidence that he was not rehired because of his disability nor that Defendant's proffer reason was pretextual.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

///
///
///
///
///
///

---

[9] Plaintiff appears to argue that pretext existed because several of his teacher observations were not in compliance with state law. (ECF No. 50 at 6.) His assessment is incorrect. Plaintiff explains that NRS § 391.680 requires a pre- and post-conference meeting for each teacher observation, which he did not consistently receive. (*Id.*) However, NRS § 391.685(1) and § 391.680(3) require that probationary teachers must receive three scheduled observations throughout the year, and those scheduled observations must have a pre- and post-conference meeting. Plaintiff did receive required pre- and post-conference meetings for his three scheduled observations during the 2017-2018 and 2018-2019, even if he did not receive these conferences for every observation. (ECF No. 56-3 at 4.) Accordingly, his scheduled observations complied with state law. But if these observations had violated state law, Plaintiff does not explain or proffer evidence explaining why doing so arises to pretext.

It is therefore ordered that Defendant Clark County School's motion for summary judgment (ECF No. 56) is granted.

The Clerk of Court is accordingly directed to enter judgment in favor of Defendant and close this case.

DATED THIS 5th Day of March 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE